IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JONATHON D. LEGGETT, | ) | CASE NO. 3:14 CV 599 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| DEB TIMMERMAN-COOPER, | ) | |
| | ) | |
| Respondent. | ) | |

*Pro se* Petitioner Jonathon D. Leggett filed this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Leggett is incarcerated in the London Correctional Institution, having been convicted in 2000 in Williams County, Ohio of one count of rape and one count of involuntary manslaughter. In this Petition, he asserts he should be re-sentenced in light of the Ohio Supreme Court's decision in *State v. Johnson*, 128 Ohio St. 3d. (2010), and his convictions should have been merged for purposes of sentencing. For the reasons set forth below, the Petition is denied.

Petitioner also filed an Application to Proceed *In Forma Pauperis*. That Application is granted.

**Factual and Procedural Background**

On February 8, 1992, Petitioner took two-year old Torilyn Contreras to a hospital

emergency room where she was pronounced dead.[1] At the time of her death, Torilyn and her brother were living with Petitioner, their mother's boyfriend, while their mother was serving a thirty day jail sentence for writing bad checks.

An autopsy revealed Torilyn had been raped and sodomized, and received a heavy blow to her abdomen, which caused internal bleeding and ultimately her death. During the autopsy, the Lucas County Coroner prepared a rape kit, composed of a vaginal swab, a rectal swab, a hair sample, and a blood specimen. The Coroner also made slides from all of the swabs in the rape kit. The rape kit was given to a policeman who logged it into evidence along with a pair of the child's underpants, the child's nightshirt and some of her bedding.

On February 10, 1992, police delivered the evidence to the Bureau of Criminal Investigation ("BCI") where preliminary tests were performed on the rape kit evidence. These tests revealed the presence of semen and blood on the vaginal and rectal swabs. The comforter from the child's bed also tested positive for semen. The BCI investigator took samples from the comforter, blood sample, and underpants. She also made two additional slides from the rectal and vaginal smears.

Police also delivered swabs to the Gennen Corporation for DNA identification testing. The lab prepared a report in March 1992 indicating the vaginal swab demonstrated Petitioner was not the source of the vaginal DNA, and that the swabs from the rectum and the comforter did not produce a pattern for human DNA.

Petitioner was indicted in March 1992 on two charges of endangering children, and

---

[1] The facts cited herein are taken from the Ohio Sixth District Court of Appeals case, *State v. Leggett*, No. WM-97-029 (Ohio App. 6 Dist. Sept. 4, 1998).

one count of involuntary manslaughter. He entered into an Alford plea on June 29, 1992 in which he pled guilty to one count of negligent child endangerment, and one count of obstructing justice. He also pled guilty to one charge of trafficking in marijuana, which constituted a probation violation in another case. The court entered a *nolle prosequi* to the other crimes as charged. At the plea hearing, the prosecutor stated that the offer of the plea was made with the understanding that the state was not prevented from bringing other charges associated with this incident, including rape, murder, or manslaughter if they discover Petitioner was the principal or an aider or abettor. The prosecution indicated to the court that the state was dismissing the child endangerment and involuntary manslaughter charges because they had insufficient evidence to prove Petitioner's guilt, They indicated he was not being charged with rape at that time because the DNA testing indicated Petitioner was not the perpetrator of that offense. The court addressed Petitioner and explained the ramifications of accepting the plea. The judge then sentenced Petitioner to serve eighteen months in prison on each count and reinstated his sentence for which he was on probation when he committed the marijuana trafficking offense. The sentences were ordered to be served consecutively.

Police continued their investigation into Torilyn's death. They re-interviewed Petitioner and obtained blood samples. They also requested that Gennan return the evidence. They received very little of it back and were informed the company had gone out of business.

In April 1994, police contracted with Cellmark Diagnostics to perform DNA testing on the evidence returned from Gennan. Cellmark indicated they could not interpret Gennan's results and stated they needed more data to make further determinations. Police contact BCI and discovered

the additional samples which had been made years earlier. Police transported the evidence to Maryland along with samples of Torilyn's and Petitioner's blood. This lab reported that Petitioner was excluded as the source of DNA in the vaginal swab, but could not be excluded as the source of the rectal swab. Police asked Cellmark to repeat the tests in July 1995. In the process of testing, all of the material on the rectal smear slide was consumed; however, the material on the coroner's vaginal smear slide and the material from the underpants was never tested. The second tests reported in November 1995 were inconclusive as to whether Petitioner was the source of the DNA material on the second rectal smear, but did not rule him out as the source.

Petitioner was indicted on March 27, 1996 on one count of rape and one count of manslaughter while attempting to commit rape. Petitioner filed a Motion to Dismiss arguing the second indictment for the same offense constituted double jeopardy and the state had chosen to "plea bargain away" its right to charge him with those greater offenses. *State v. Leggett*, No. WM-97-029, 1998 WL 614553, at * 4 (Ohio App. 6 Dist. Sept. 4, 1998). The trial court agreed and on July 3, 1996 dismissed the charge of involuntary manslaughter. The court, however, refused to dismiss the rape charge.

The State appealed that decision. The Ohio Sixth District Court of Appeals reversed the trial court decision on January 24, 1997 reasoning that Petitioner "voluntarily, knowingly, and intelligently waived his right to raise a double jeopardy claim" when he took the plea deal. *See State v. Leggett*, No. WM-96-015, 1997 WL 28417 (Ohio App. 6 Dist. Jan. 24, 1997).

Petitioner filed a second Motion to Dismiss in the trial court, this time asserting that he was denied a speedy trial and due process. He argued that time between his arrest and his trial

violated his constitutional right to a speedy trial. Moreover, he argued that the destruction of constitutionally material evidence in his case prejudiced his defense and denied him his constitutional right to a fair trial. The court conducted an evidentiary hearing. At the conclusion of the hearing, the court issued its judgment on October 22, 1998 finding that there had been an unjustified delay in the case, and that the Petitioner's Sixth Amendment right to a speedy trial had been compromised to the extent that they materially prejudiced his ability to obtain a fair trial. In addition, the court found that deficits in the chain of custody and the unjustifiable delays in bringing the second indictment, coupled with the destruction of evidence so prejudiced Petitioner's defense that he was denied a fair trial.

Once again, the State appealed that decision and the court of appeals reversed the decision of the trial court. The Court of Appeals determined that the state need not negate every possibility of evidence tampering, but could establish through testimony that there were no alterations, tampering or substitutions. They found that the testimony presented adequately established chain of custody. The court further acknowledged that while the Gennan evidence indicating that Petitioner was excluded as the source of the DNA from the vaginal and rectal swabs could be "potentially useful in [Petitioner's] defense, is is clearly not 'materially exculpatory.'" *State v. Leggett*, No. WM-97-029, 1998 WL 614553 (Ohio App. 6 Dist. Sept. 4, 1998). The court also stated that the DNA evidence which was consumed by the Cellmark lab was not "materially exculpatory" and that Petitioner's speedy trial rights were not violated because Petitioner was in prison for most of the time between his arrest and the indictment. They acknowledge that the defense was prejudiced to some degree by the loss of the Gennan evidence but stated that the four

year delay was not responsible for that loss. Petitioner filed an appeal to the Ohio Supreme Court, which dismissed the appeal as not involving a substantial constitutional question.

Petitioner's case proceeded to trial and on March 6, 2000, and the jury found him guilty on both charges. He was sentenced on March 10, 2000 to life in prison on count one for rape, and to ten to twenty-five years on count two for involuntary manslaughter. The sentences were ordered to run consecutive to each other and consecutive to the sentence he was serving at that time.

### Petitioner's Direct Appeal

Petitioner timely appealed his conviction and sentence. He asserted five assignments of error:

> 1. Appellant was denied his constitutional right to the effective assistance of counsel when his trial attorney did not seek a continuance upon learning during trial that (1) the complete records of exculpatory DNA testing by Gennan Corporation, which had been presumed entirely lost, were probably available from SUMA in Akron (TR 5 at 139), and Cellmark Diagnostics actually retained testable, albeit amplified samples.
>
> 2. When the prosecutor purposefully and knowingly violated a court order by authorizing Cellmark to proceed with testing of a final slide, knowing that the sample on the slide would be fully consumed, and without even telling the defense that the testing was being done so that they could have an expert observe the testing, Appellant was denied his right to due process and fair trial as guaranteed by the constitutions of the United States and the State of Ohio.
>
> 3. When Cellmark Diagnostics, acting at the instance of and as an agent of the state, violated its own protocol in 1995 by conducting DNA testing which wholly consumed specimens without first informing its clients, the Montpelier Police Department and the Williams County Prosecutor, so that they could attempt to balance or protect Appellant's rights, Appellant's rights to a fair trial and due process were violated.

> 4. Prosecution of the Defendant in this case violated his rights under the Double Jeopardy Clause of the State of Ohio and United States Constitutions.
>
> 5. Appellant's conviction is against the manifest weight of the evidence and is supported by insufficient evidence as it violates the 'Physical Facts Rule' of *McDonald v. Ford Motor Co.*, 42 Ohio St. 2d 8 (1975).

*State v. Leggett*, No. WM-00-003, 2002 WL 199186 (Ohio App. 6 Dist. Feb. 8, 2002). The Court of Appeals found Petitioner's second, third and fourth assignment were decided in the State's earlier appeals and constituted law of the case. He could not challenge those issues again on appeal. The court found Petitioner's counsel was not ineffective as argued in his first assignment of error and his conviction was supported by sufficient evidence. His conviction was affirmed on February 8, 2002. Petitioner appealed that decision to the Ohio Supreme Court, who declined to accept jurisdiction.

### Post Judgment Motions

Petitioner filed a post judgment motion for DNA testing on October 29, 2004. The Motion was granted on November 16, 2005. On June 11, 2007, the court ordered Ohio B.C.I. to conduct the test even though that testing would likely consume the entire remaining DNA samples. The results of the testing were reported to the court on September 27, 2007; however, there is no indication in this Petition of the nature of those results.

Petitioner filed a Motion to Modify Sentence on August 24, 2012. The Motion was overruled four days later without a hearing. He filed a Notice of Appeal on October 2, 2012 which was dismissed as untimely. He filed a Motion for Leave to File a Delayed Appeal and used the appellate case number assigned to his Notice of Appeal. The Court of Appeals denied the Motion,

stating that the Motion had to be filed in a new appeal and assigned a new number. Rather than filing the Motion as a new appeal, Petitioner filed an appeal of this decision to the Ohio Supreme Court on September 9, 2013 in a Motion for Delayed Appeal. The Supreme Court denied the Motion on November 20, 2013.

### Habeas Petition

Petitioner then filed the within Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254. He asserts one assignment of error:

> The trial court erred when it failed to conduct a *de novo* resentencing, and not conducting a merger analysis. Which did not create a new law but clarified section 2941.25 of the Ohio Revised Code as it exists at the present time, and as it did exist at the time that Mr. Leggett was originally sentenced. That analysis for determining whether or not a criminal defendant in Ohio should be sentenced consecutively for multiple offenses he has been accused or found guilty of committing. Mr. Leggett should be resentenced as the sentence under which he is now detained is void ab inito, as it does not comply to law and it must be vacated and Mr. Leggett must be resentenced in accordance to the law as written by the Legislature and imposed by the Courts of the State of Ohio.

(Pet. ECF No. 1 at 3).

### Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254, was signed into law on April 24, 1996 and applies to habeas corpus petitions filed after that effective date. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *see Woodford v. Garceau*, 538 U.S. 202, 210 (2003); *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999). The AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, and 'to further the principles of comity, finality, and federalism.'" *Woodford*, 538 U.S. at 206 (citing

*Williams v. Taylor*, 529 U.S. 362, 436 (2000)). Consistent with this goal, when reviewing an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. *Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774-76 (6th Cir. 2008). The Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A federal court, therefore, may not grant habeas relief on any claim that was adjudicated on the merits in any state court unless the adjudication of the claim either: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Wilkins*, 512 F.3d 768, 774 -76 (6th Cir. 2008).

A decision is contrary to clearly established law under §2254(d)(1) when it is "diametrically different, opposite in character or nature, or mutually opposed" to federal law as determined by the Supreme Court of the United States. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). In order to have an "unreasonable application of ... clearly established Federal law," the state-court decision must be "objectively unreasonable," not merely erroneous or incorrect. *Id.* at 409. Furthermore, it must be contrary to holdings of the Supreme Court, as opposed to dicta. *Id.* at 415.

A state court's determination of fact will be unreasonable under §2254(d)(2) only if it represents a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). In other words, a state court's determination of facts is unreasonable if its finding conflict with clear and convincing

evidence to the contrary. *Id.* "This standard requires the federal courts to give considerable deference to state-court decisions." *Ferensic v. Birkett*, 501 F.3d 469, 472 (6th Cir.2007). AEDPA essentially requires federal courts to leave a state court judgment alone unless the judgment in place is "based on an error grave enough to be called 'unreasonable.'" *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir.1998).

### Procedural Barriers to Habeas Review

Before a federal court will review the merits of a Petition for a Writ of Habeas Corpus, a Petitioner must overcome several procedural hurdles. Specifically, the Petitioner must surmount the barriers of exhaustion, procedural default, and time limitation.

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see Baldwin v. Reese*, 541 U.S. 27 (2004). Exhaustion is fulfilled once a state supreme court provides a convicted defendant a full and fair opportunity to review his or her claims on the merits. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

To be properly exhausted, each claim must have been "fairly presented" to the state courts. *See e.g. Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Frazier v. Huffman*, 343 F.3d 780, 797 (6th Cir. 2003). Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim. *Wagner*, 581 F.3d at 414. For the claim to be exhausted, it must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984). Moreover, the

claim must be presented to the state courts under the same legal theory in which it is later presented in federal court. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). It cannot rest on a legal theory which is separate and distinct from the one previously considered and rejected in state court. *Id.* This does not mean that the applicant must recite "chapter and verse" of constitutional law, but the applicant is required to make a specific showing of the alleged claim. *Wagner,* 581 F.3d at 414.

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address because a petitioner did not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, the state judgment is not based on a resolution of federal constitutional law, but instead "rests on independent and adequate state procedural grounds." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir.1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state procedural grounds for a state court decision absent a clear statement to the contrary. *See Coleman*, 501 U.S. at 735.

Simply stated, a federal court may review only federal claims that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

**Analysis**

Here, it is difficult to determine whether Petitioner exhausted his state court remedies for the claim he asserts in his Petition. He indicates he filed a Motion for *De Novo* Resentencing, but he does not indicate the grounds he asserted in that Motion. Therefore, although it is possible Petitioner asserted this claim in that Motion, Petitioner has not demonstrated that he asserted this claim to the highest court in the state.

Nevertheless, assuming Petitioner did assert this claim in his Motion and in his appeals of the denial of that Motion, the claim would be procedurally defaulted. Petitioner's appeal of the denial of his Motion was untimely. He attempted to file a delayed appeal but his Motion for Leave to File Delayed Appeal was denied because he used the case number of the appeal that had been denied. He did not submit a new Motion for Leave to File Delayed Appeal, but instead sought leave from the Ohio Supreme Court to file a delayed appeal. That motion was denied. Petitioner was barred on procedural grounds from submitting his claim to the state courts. As such, he is also barred from receiving federal habeas review unless he can demonstrate cause for the default and actual prejudice. He offers no reason for failing to follow the procedural rules set forth by the state, and his grounds for relief are procedurally defaulted.

Finally, even if Petitioner's ground for relief was not barred from habeas review by procedural default, this Court could not entertain his claim. It is stated solely as a violation of state law. He contends the state should conduct a merger analysis for sentencing under Ohio Revised Code § 2941.25 as clarified by *State v. Johnson*, 128 Ohio St. 3d 153 (2010). A claim based solely on an error of state law is not redressable through the federal habeas process. *Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998).

## Conclusion

Accordingly, Petitioner's Application to Proceed *In Forma Pauperis* is granted, the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is denied, and this action is dismissed pursuant to Rule 4 of the Rules Governing Section 2254 Cases. Further, the Court CERTIFIES pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith, and there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253; Fed.R.App.P. 22(b).

IT IS SO ORDERED.

_____
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Dated: *August 20, 2014*